All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning. Ladies and gentlemen, welcome to the Ninth Circuit. Before we begin oral argument today, we have a number of matters to be submitted, and let me recite those now. They are Shen v. Garland, Cannell v. Garland, Owls v. Garland, Virendo Singh v. Garland, Lamnev v. Plaza-Segundo, Whitaker v. Reeder, Voe v. Choi, Ho v. Flotis, Chavez-Guzman v. Garland, and USA v. Avalos. So with those submissions, we are now ready to hear argument in the first argued case of the day, and that is Ho v. Russi. We have one counsel today. Is that you, the counsel? I am, Your Honor. Okay, very well. So I want to be sure I do this correctly. Do you pronounce your last name Tao? Tao. Pass. Okay, all right. Please proceed. Good morning, Your Honors. If it may please the Court, Pamela Tao on behalf of Plaintiff Appellant John Ho. Your Honors, this should have been what was a very basic ADA access case. The plaintiff here asserted a cause of action against the defendant under the federal ADA claim and coupled that claim with a state unruh claim. When the defendants failed to follow responsive pleading, the plaintiff sought and was granted a default on both of its ADA and state claims. Thereafter, the plaintiff moved for default judgment. And in response, the court, sua sponte, on its own, without any prior notice to the plaintiff or even an opportunity to be heard, dismissed plaintiff's state unruh claim. The court, in doing so, issued a boilerplate order declining supplemental jurisdiction over plaintiff's state unruh claim under 1367C4, citing the presence of exceptional circumstances. The court also struck plaintiff's motion for default judgment in light of the court's sua sponte dismissal of the state unruh claim. Thereafter, plaintiff filed a second motion for default judgment, seeking an award of attorney's fees for $3,960. The court slashed plaintiff's request for attorney's fees to $500, citing no other reason but its belief that imposing such a, quote, substantial award on a defendant during the time of COVID would be unjust. The court's refusal to grant plaintiff's full requested attorney's fees was not based on its belief that the hourly rate was unreasonable or that the time spent on the case was unreasonable. And it is these series of erroneous rulings that have led us to the court today. The first is that the court's dismissal of the state unruh claim without any prior notice is unfair and a clear abuse of the district court's order. Moreover, in exercising its discretion to decline supplemental jurisdiction under 1367C4, the district court's issuance of a boilerplate order that it does not engage in a case-specific analysis simply is incompatible with the Ninth Circuit and the Supreme Court's ruling that when utilizing 1367C4, a district court must engage in a case-specific analysis. Counsel, before we get to that part of the case, I'm interested in your take on the heightened pleading standards. As you well know, under ERIE, the federal courts have certain procedural requirements, and we don't usually follow the state procedural requirements. I assume you agree that the heightened pleading standards in this case are state procedural requirements, are they not? I do, Your Honor. They are state requirements. Okay, so given that circumstance, it seems like what you're asking us to do is to tell the district courts that they are to construe state procedural standards in these cases, and there are a number of them, as you know. Is that correct? Absolutely not, Your Honor. What we're saying here is that if the district court is going to decline supplemental jurisdiction under 1367C4, it must look to the particular facts of this case. And in this case, the plaintiff… So we're really talking about this second part, are we not? Whether there's comedy, etc., etc., and whether or not that second prong of Arroyo is satisfied. Isn't that correct? I would disagree, Your Honor. Arroyo vs. Rosas was decided after the matters on this was fully briefed, and so I'd like to just take a quick opportunity to address that, if I may. In Arroyo vs. Rosas, what the plaintiff never addressed or brought to the attention of the court was that the orders issued by the district courts are boilerplate orders. But counsel, counsel, counsel, the boilerplate issue, I mean, you can use your time however you want, but the boilerplate issue, to me, is a red herring. As long as the court addresses the specifics of the case, what's the problem with the boilerplate order? About 20 percent of the cases, at least according to Arroyo, 20 percent of the cases coming into the Central District of California during the requisite time period were of this nature, ADA slash UNRRA Act. So as long as the facts of the case, the specifics of the case, the basis for the decision are included, what's wrong with the boilerplate order? Because the facts in the boilerplate order do not fit the facts of this case. Well, maybe not in – you're talking about this case. I'm talking about generally speaking. You seem to be condemning boilerplate orders as a whole, and I'm not seeing what the connection is here. The issue here is that when you issue a boilerplate order, you don't look at the specific facts of the case. So, for example, the district court has issued these same type of boilerplate orders even when an ADA plaintiff is not subject to the heightened pleading requirements under CCP 425.5. But why would the court issue something like that? I mean, we're talking about construction-based UNRRA Act issues here and ADA. And those same requirements apply there even if somebody is not a frequent filer, if you will. Isn't that correct? That's not correct, Your Honor. So a high-frequency litigant is only subject – only a high-frequency litigant is subject to the heightened pleading requirements under 425.5. A high-frequency litigant is identified as an ADA plaintiff that has filed 10 or more construction-related complaints in the preceding 12 months. In other words, if this is a plaintiff's first time asserting an UNRRA claim in the preceding 12 months, he or she is not subject to the heightened pleading requirements set forth under 425.5. Regardless – I'm sorry, Your Honor, I didn't catch that. Are you sure of that? I am, Your Honor. There are certain requirements, for example, that the complaint be verified. So, counsel, counsel, let me ask you – I think this goes back to something Judge Smith asked early on, which is your argument is that your client isn't subject to the heightened pleading requirements. But are we just supposed to take your word for that? I mean, when I say we, the federal courts, the district court, are they supposed to take your word for that? Or do they need to dig into it and figure out, just like the state court would, whether or not your client is – because it seems like it's problematic to just say they need to take your word for it because everybody will just say that they're not subject to the heightened pleading requirements. And if they have to dig into it, doesn't that have some of the same comedy concerns? I mean, don't we want state courts deciding when the heightened pleading requirements attach, not federal courts? If I may just clarify a very quick point for the court. We are not arguing that this particular plaintiff is not subject to the heightened pleading requirements. You've actually specified that he is, have you not? He is, Your Honor. The point regarding sort of when the heightened pleading requirements apply goes back to the boilerplate order, which is that the district courts issue these orders regardless of whether the heightened pleading requirements apply or not. So, for example, again, if an ADA plaintiff, this is his first time approaching the court asserting an unruh act, the district courts nonetheless will issue this boilerplate order. So you're running low on time. I want to make sure and ask something. So you're really focused on the boilerplate order issue. Do you agree or not that the first step in the test, which is exceptional circumstances, that that, is that a case-specific analysis or not? I believe it must be so. Okay. So I think you're right. I agree with you because the cases before ARO say that. In fact, they focus, as I see it, more on that being case-specific than the second step, the Gibbs factors being case-specific. So where in ARO, the case in ARO, what, I mean, I assume ARO was correct in that it did a case-specific analysis, but I don't see that the exceptional circumstances analysis in ARO, it talks about the problems with these claims generally. It doesn't get into the specifics of the ARO case the way you want us to on the second factor in your case. So that's a difficulty. I'm not sure that case-specific in ARO meant what you think it means. That's what I'm worried about. The issue here is my interpretation is that case-specific means you have to understand why the particular facts of this case justify the rationale for declining supplemental jurisdiction. In ARO, the Ninth Circuit said, we have a situation where we have plaintiffs filing state claims in federal court to circumvent the pleading requirements under UNRU. So why couldn't it be true? I just want to make sure because we're on time. Why couldn't it be true that the facts of this case, because it is one of these type of cases, just like in ARO, the analysis in ARO, why couldn't it be true that the facts of this case make it so that because it's one of these types of cases, make it so that the test is met, not something more specific that you're looking for, like something about whether or not the heightened pleading requirements are met or required, etc.? Because our complaint filed in this case meets all the pleading requirements set forth under CCP 42.5. That takes me back to the question of you're telling us that. You're telling us that, but do we really want federal courts being the ones that decide, that analyze and decide whether or not something meets a state heightened pleading requirement, or is that something we want state courts deciding? I think the federal courts are in a very well position to determine whether or not the pleading requirements are met under 42.5. They may be, but there's comedy concerns, right? Like there's, you know, what if a federal court was to say, we think this meets the heightened pleading requirement, but a state court in exactly the same, in a case where the pleading was exactly the same, so we don't think it is, who wins? I think we have case law on that issue. So, for example, a defendant in this case would clearly bring a motion to dismiss a state claim based on supplemental jurisdiction. In that case, we could present our argument to the court, and you would rely on case law on such an issue. And again, this goes back to sort of the boilerplate order, which is that if the district courts issue these orders, even when a plaintiff is not, for example, asserting an architectural barrier access, so there's different types of barriers, right? You can assert an ADA claim based on policies. For example, this policy is discriminatory, or versus an architectural barrier. The district courts don't even take this into consideration, and they just issue the boilerplate order simply because an unruly claim is being asserted. And that's really the problem with the boilerplate order. Over time, let me ask my colleagues whether either has additional questions for Ms. Ohm. I have one question for her. Please. It seems that you're arguing these boilerplate orders must always be erroneous or an abuse of discretion because you're suggesting that in some instances the district courts are issuing boilerplate orders that don't address the specifics of the case. It's not even an architectural barrier case, for example. But that's not the case here. So, for example, we argued about or talked about heightened pleading standards, but you acknowledged that your client was subject to those requirements. Is there anything about this particular order that was erroneous? Yes, Your Honor. Again, aside from the heightened pleading requirements, this boilerplate order was issued after the court had already entered default on plaintiff's claim. Well, that's different. I'm not talking about your interpretation of whether the entry of default by the clerk is the same as the entry of default judgment by the court. You're suggesting that these boilerplate orders are always an abuse of discretion. And to support that argument, you suggest that they are issued in cases in which they don't really apply or they make erroneous factual statements. So I'm not asking about a difference of interpretation of the law. I know that you differ with the district court's interpretation. But was there something specifically factually erroneous about this order? Yes, that the entire purpose of filing the federal complaint and the state claim in federal court was to circumvent the pleading requirements under 425.5. In Arroyo v. Rosa, the Ninth Circuit said that the exceptional circumstance that exists is that by allowing a plaintiff to file his state claim in federal court, they're taking the teeth out of 425.5. And again, we're not doing that because what you would essentially be doing is you're saying refile in a state court and meet the heightened pleading requirements there. What we would be doing is essentially filing the exact same complaint because in this case we've ensured that the complaint filed in federal court meets the heightened pleading requirements of the state California Code of Civil Procedure 425.5. Any other questions about my colleague? I'm sure we could talk about this for a long time, but we've had a good discussion. Thank you very much for your argument. As you know, there's nobody on the other side, which is part of the issue of these kinds of cases. So we thank you for your argument. The case just argued is submitted, and we wish you a good day. Thank you, Your Honors. Have a good day.
judges: SMITH, BADE, VANDYKE